# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

Cecil Guy Truman, )
    Plaintiff, )
    )
v. )     1:18cv963 (LMB/IDD)
    )
Sgt. Frye, et al., )
    Defendants. )

## MEMORANDUM OPINION

Cecil Guy Truman, a Virginia inmate proceeding pro se, initiated this civil action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Defendants Ramon Frye ("Frye"), Anthony Farley ("Farley"), and Jordan McDougal ("McDougal") (collectively "defendants") have filed a Motion to Dismiss the claims against them as well as a memorandum in support [Dkt. Nos. 28-29]. Plaintiff was provided the notice required by Local Rule 7(K) and the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and has filed a memorandum opposing defendants' Motion [Dkt. No. 31]. For the reasons that follow, defendants' Motion to Dismiss will be granted, and the underlying complaint will be dismissed with prejudice.

## I. Background

The following allegations are assumed true for the purpose of ruling on defendants' Motion to Dismiss. At all relevant times, plaintiff resided in the protective custody block of the Prince William County Adult Detention Center ("PWCADC") [Am. Compl. ¶¶ 3, 5]. On June 29, 2018, in the presence of defendants Frye, Farley, and McDougal, inmate Walter Cook screamed death threats and racial comments at plaintiff while "violently kicking his cell door" [Id. at ¶ 7]. The same day, plaintiff "was asked to step into his cell so that inmate Walter Cook could come out of his cell to get his medication" [Id. at ¶ 8]. As Cook returned to his cell, he

spat through the crack in plaintiff's cell door, spraying saliva on plaintiff's face [Id]. Cook continued "to spit ... and scream threats while kicking and hitting" the cell door [Id]. Defendant McDougal witnessed this event and made eye contact with plaintiff through the observation window immediately thereafter [Id at ¶ 24]. Inmate Cook had been exhibiting similar behavior—albeit without spitting on plaintiff—for approximately one month in the buildup to the incidents of June 29, 2018 [Id. at ¶ 6].

Because plaintiff believed inmate Cook to be HIV-positive, he asked to be seen by medical staff at PWCADC after coming into contact with Cook's saliva [Id. at ¶ 9]. Defendants refused plaintiff's request and instead offered plaintiff "disinfectant spray and paper towels" to clean inmate Cook's saliva off the cell door [Id. at ¶ 9-10].

On July 2, 2018, plaintiff visited Magistrate Heath to pursue a criminal complaint regarding the events of June 29 [Id. at ¶ 12]. On his way to the magistrate, plaintiff encountered defendant Frye, who told plaintiff he would not help him seek relief for the actions of inmate Cook [Id. at ¶ 11]. At the hearing in front of the magistrate, in reference to Cook's actions, defendant Frye stated that, "This kind of thing happens all the time" [Id. at ¶ 12]. Plaintiff's request was ultimately denied [Dkt. No. 36]. Upon returning to his cell, plaintiff expressed concerns about his constitutional rights to defendant Frye, to which Frye responded by saying that, as a prisoner, plaintiff did not have rights [Id. at ¶ 13].

On July 20, 2018, plaintiff was seen by medical officials for reasons unrelated to the incidents of June 29, 2018 [Id. at ¶ 16]. When plaintiff informed them of his contact with inmate Cook's saliva and stated that Cook was HIV-positive, medical staff stated that they could not treat plaintiff for anything unrelated to the scheduled purpose of the appointment [Id].

## II. Standard of Review

Defendants bring motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A motion to dismiss under Rule 12(b)(1) challenges the Court's subject

matter jurisdiction. This type of motion can take two forms: "First, it may be contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based ... Second, it may be contended that the jurisdictional allegations of the complaint were not true." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Where, as here, a defendant argues that a plaintiff has not alleged facts sufficient to establish subject matter jurisdiction, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Id.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint; it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if "the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Nemer Chevrolet, Ltd. v. Consumeraffairs.com Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). A plaintiff must therefore allege facts in support of each element of each claim he or she raises; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Iqbal at 678.

Where a complaint is filed by a prisoner proceeding pro se, that complaint must be construed liberally regardless of how unskillfully it is pleaded. Haines v. Kerner, 404 U.S. 519 (1972). A pro se litigant is not held to the strict pleading requirements demanded of attorneys, and, for this reason, a court's "power to summarily dismiss a prisoner's pro se complaint is limited." Figgins v. Hudspeth, 584 F.2d 1345, 1347 (4th Cir. 1978).

3

## III. Analysis

1. **Lack of Subject Matter Jurisdiction – 12(b)(1)**

Defendants submit that the Court lacks subject matter jurisdiction over this action. They argue that plaintiff's complaint fails to satisfy the requirements of either 28 U.S.C. § 1331 or § 1332, the federal question and diversity of citizenship jurisdiction statutes, respectively. Even if defendants are correct that there is no basis to find the existence of diversity jurisdiction in this instance, plaintiff provides sufficient facts in the complaint to form the foundation of a cause of action under 42 U.S.C. § 1983, thereby placing this matter squarely within the Court's jurisdictional reach. Title 42 U.S.C. § 1983 holds, in pertinent part,

> Every person who, under color of state law, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 is not, in and of itself, a source of substantive rights; instead, the statute offers "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).

Plaintiff argues that the allegations set out in his complaint support claims that defendants violated his rights under the Eighth and Fourteenth Amendments. Specifically, he alleges that, (1) through deliberate indifference or reckless disregard, defendants failed to protect him from violence at the hands of other prisoners[1], (2) that defendants denied him adequate medical attention, (3) that defendants Frye and McDougal denied him due process, and (4) that

---

[1] In his complaint, plaintiff separates his failure to protect theory into two claims: one based on deliberate indifference and another based on reckless indifference. His claims will here be consolidated into a singular failure to protect claim based on deliberate indifference.

4

defendants denied him equal protection under the law. Because each of these claims is theoretically viable in a § 1983 suit, defendants' 12(b)(1) motion to dismiss for lack of subject matter jurisdiction will be denied.

## 2. Failure to State a Claim – 12(b)(6)

Defendants also move to dismiss this action on the ground that plaintiff has failed to state a claim upon which relief can be granted. Plaintiff's four claims shall be analyzed in turn.

### a. *Failure to Protect*

Plaintiff argues that defendants violated his rights when they failed to protect him from the threats made and the ultimate assault carried out by inmate Walter Cook. "[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quotation marks and citation omitted). A prisoner who alleges deliberate indifference under the Eighth Amendment arising from failure to protect must satisfy two requirements: "First, the deprivation alleged must be, objectively, sufficiently serious," and second, "the prison official must have a sufficiently culpable state of mind." Id. at 834 (quotation marks and citation omitted).

#### i. No Objectively "Extreme Deprivation"

To satisfy the objective component, a prisoner must allege an "extreme deprivation," De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003), which requires the prisoner to "allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." Odom v. S. Carolina Dept. Of Corr., 349 F.3d 765, 770 (4th Cir. 2003).

Both the Supreme Court and the Fourth Circuit have indicated that a prisoner can bring an Eighth Amendment claim to challenge harm that is "sure or very likely" to accrue in the future, even where the harm has not yet materialized. See Helling v. McKinney, 509 U.S. 25, 33 (1993) ("That the Eighth Amendment protects against future harm to inmates is not a novel

5

proposition ... It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them"); Woodhous v. Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Although not every prospective harm will suffice to implicate the Eighth Amendment, courts have recognized that exposure to contagious diseases can provide the basis for relief. See, e.g., Gates v. Collier, 501 F.2d 1291 (5th Cir. 1974) (holding that inmates were entitled to relief under the Eighth Amendment when they proved threats to personal safety after prison allowed inmates with serious contagious diseases to mingle with general population).

In this case, the risk of future harm alleged by plaintiff is too remote to implicate the Eighth Amendment. What's more, inconsistencies between plaintiff's allegations and the exhibits he submitted cast doubt on the claims. Here, plaintiff alleges that he was repeatedly threatened and ultimately assaulted by inmate Cook. The assault consisted of Cook spitting at plaintiff's cell door, which was closed. Plaintiff states, however, that some saliva traveled through a crack in his door and landed on his face. Plaintiff further alleges that Cook was HIV-positive at the time he spat at plaintiff. Yet, in the grievance plaintiff filed on July 2, 2018, three days after the incident, plaintiff claimed that he wanted to see medical staff "to know if [he had] been exposed to any diseases this inmate may have [had]" [Dkt. No. 16]. That statement undercuts plaintiff's current allegation that Cook was HIV-positive at the time of the incident. Even assessing plaintiff's allegations in the light most favorable to him, the blatant inconsistencies[2] between plaintiff's statements and the exhibits he submitted support defendants' argument that the harm alleged in this case is too speculative to support an Eighth Amendment violation.

---

[2] A reviewing court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotations omitted).

### ii.  No Deliberate Indifference

To establish the subjective component of a failure to protect claim, a prisoner must show that a prison official acted with "deliberate indifference," which entails "something more than mere negligence" but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 834-35. Deliberate indifference "requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." De'Lonta, 330 F.3d at 634.

Plaintiff alleges that each defendant was aware that inmate Cook had repeatedly screamed threats and racial slurs at him while "violently" kicking his cell door. Plaintiff further alleges that defendants knew, before the incidents of June 29, 2018, that inmate Cook was HIV-positive. Plaintiff does not allege, however, that Cook had ever spat at plaintiff before the day in question or that defendants had any notice that Cook would act in such a manner. Additionally, based on plaintiff's allegations, it is clear that defendants acted to ensure that plaintiff was securely in his cell before releasing Cook into the area. That defendants did not sequester plaintiff and Cook in different parts of the building or take every possible measure to prevent any degree of contact between the two does not suffice to support a finding that defendants were deliberately indifferent. Accordingly, plaintiff has not alleged facts to support either element of his Eighth Amendment failure to protect claim, and defendant's Motion to Dismiss will be granted in this respect.

### b.  *Denial of Medical Treatment*

Plaintiff asserts that, in denying his request to be seen by medical officials after coming into contact with inmate Cook's saliva, defendants violated his rights. To state a claim based on the inadequacy of medical care, plaintiff must sufficiently allege two distinct elements: first, he must allege the existence of a serious medical need. See, e.g., Hall v. Holsmith, 340 Fed. Appx. 944, 947 & n.3 (4th Cir. 2009) (holding that flu-like symptoms did not constitute a serious

7

medical need); Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious).

Second, plaintiff must allege deliberate indifference to that serious medical need. Under this second prong, an assertion of negligence or even malpractice is insufficient to constitute a violation of the Eighth Amendment. Instead, "an official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) (citing Scinto v. Stansberry, 841 F.3d 219, 225-26 (4th Cir. 2016)).

Defendants in this action are not themselves members of medical staff, and "a medical treatment claim cannot be brought against non-medical personnel unless [the non-medical professional defendants] were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct." Lewis v. Angelone, 926 F.Supp. 69, 73 (W.D. Va. 1996) (citing Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990)). Though plaintiff has alleged that defendants were involved with a denial of treatment in that they refused his request to be seen by medical staff, he has not satisfactorily alleged an underlying serious medical need to be examined in the first place. As discussed above, per his own allegations, plaintiff was exposed to only the small amount of saliva that somehow traveled through a crack in his cell door. The risk that such an occurrence could lead to illness in the future falls far short of the "sure or very likely" future harm standard set out by the Supreme Court. See Helling at 33. Accordingly, defendants' Motion to Dismiss will be granted as to this claim.

### c. *Due Process*

Plaintiff argues that defendant Frye violated his due process rights by providing false testimony to Magistrate Heath when plaintiff sought a criminal complaint against inmate Cook. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any

8

person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law. Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015).

The Fourth Circuit has recognized that due process includes the "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in his investigatory capacity." Washington v. Wilmore, 407 F.3d 274, 282 (4th Cir. 2005). Plaintiff fails to provide factual support for his allegation that any fabricated evidence was used to deprive him of his liberty. At best, plaintiff asserts that his ability to initiate a criminal complaint against inmate Cook was hampered by defendant Frye's allegedly false testimony. As a private citizen, though, plaintiff "lacks a judicially cognizable interest in the [criminal] prosecution or nonprosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973); see Lopez v. Robinson, 914 F.2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal prosecution"). For these reasons, defendants' Motion to Dismiss will be granted as to this claim.

### d. Equal Protection

Finally, plaintiff asserts that Frye violated his rights to equal protection under the law by providing false testimony to Magistrate Heath. The Equal Protection Clause of the Fourteenth Amendment protects against arbitrary classifications by state actors and ensures that all similarly situated individuals will be treated in the same way. U.S. Const. amend. XIV. To succeed on an equal protection claim, a plaintiff must show that (1) he was treated differently from others, (2) who were similarly situated, and (3) that this unequal treatment was the result of intentional or purposeful discrimination. See Plyer v. Doe, 457 U.S. 202 (1982); Morrison v. Garraghty, 239

F.3d 648, 654 (4th Cir. 2001). Because plaintiff has failed to allege facts in support of any of these three elements, defendants' Motion to Dismiss will be granted as to this claim.[3]

### IV. Conclusion

For the foregoing reasons, defendants Frye, Farley, and McDougal's Motion to Dismiss will be granted by an order to be issued with this Memorandum Opinion.

Entered this 18th day of July 2019.
Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

---

[3] Because plaintiff has failed to state a claim upon which relief can be granted, there is no need to conduct an analysis of defendants' proposed qualified immunity defense.